IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-591

 No. COA19-1171

 Filed 2 November 2021

 Mecklenburg County No. 15 CRS 245691-92

 STATE OF NORTH CAROLINA

 v.

 HALO GARRETT, Defendant.

 Appeal by the State from order entered 19 September 2019 by Judge Donnie

 Hoover in Mecklenburg County Superior Court. Heard in the Court of Appeals 9

 September 2020.

 Attorney General Joshua H. Stein, by Assistant Attorney General Kimberly N.
 Callahan, for the State.

 Appellate Defender Glenn Gerding, by Assistant Appellate Defender David W.
 Andrews, for defendant-appellee.

 MURPHY, Judge.

¶1 On a motion to dismiss pursuant to N.C.G.S. § 15A-954(a)(4), a defendant

 bears the burden of showing his constitutional rights were flagrantly violated,

 causing irreparable prejudice to the preparation of his case that can only be remedied

 by dismissal of the prosecution. Here, Defendant cannot show that he experienced

 any flagrant violation of his constitutional rights, and as such he was not irreparably

 prejudiced. We reverse the trial court’s order dismissing Defendant’s charges and
 STATE V. GARRETT

 2021-NCCOA-591

 Opinion of the Court

 remand to the trial court.

 BACKGROUND

¶2 Defendant Halo Garrett was born on 24 September 1999. On 13 December

 2015, Defendant, at sixteen years old, allegedly broke into a home and stole several

 items.

¶3 On 24 October 2016, Defendant was charged in Mecklenburg County Superior

 Court as an adult pursuant to the then effective version of N.C.G.S. § 7B-1604(a) with

 felonious breaking or entering and larceny after breaking or entering, both Class H

 felonies. See N.C.G.S. § 7B-1604(a) (2015) (“Any juvenile, including a juvenile who is

 under the jurisdiction of the court, who commits a criminal offense on or after the

 juvenile’s sixteenth birthday is subject to prosecution as an adult.”). In 2017, after

 Defendant was charged, the General Assembly passed the Juvenile Justice

 Reinvestment Act, which changed how and when a juvenile could be prosecuted as

 an adult in Superior Court.1 See 2017 S.L. 57 § 16D.4(c)-(e). The Juvenile Justice

 1Most relevant to the facts of this case, the Juvenile Justice Reinvestment Act
 changed how sixteen-year-old and seventeen-year-old juveniles charged with Class H and
 Class I felonies could be prosecuted. Compare N.C.G.S. § 7B-1604(a) (2015), with N.C.G.S. §
 7B-2200.5(b) (2019). Prior to the enactment of the Juvenile Justice Reinvestment Act, any
 juvenile who was sixteen or older when committing an alleged criminal offense was
 automatically prosecuted as an adult. See N.C.G.S. § 7B-1604(a) (2015) (“Any juvenile,
 including a juvenile who is under the jurisdiction of the court, who commits a criminal offense
 on or after the juvenile’s sixteenth birthday is subject to prosecution as an adult.”). After the
 enactment of the Juvenile Justice Reinvestment Act, the same juveniles are under the
 jurisdiction of Juvenile Court, and an assessment must be made prior to transferring
 STATE V. GARRETT

 2021-NCCOA-591

 Opinion of the Court

 Reinvestment Act became effective on 1 December 2019 and does not apply

 retroactively. See 2017 S.L. 57 § 16D.4(tt). Had Defendant’s offense date for the same

 Class H felonies occurred after 1 December 2019, Defendant would have initially been

 within the jurisdiction of the Juvenile Court2 and an assessment would have been

 made to determine if he should be sentenced as an adult in Superior Court. See

 N.C.G.S. §§ 7B-2200.5(b); 7B-2203 (2019). Pursuant to the law at the time of his

 alleged offense in 2015, Defendant must be tried and potentially sentenced as an

 adult in Superior Court. See N.C.G.S. § 7B-1604(a) (2015).

¶4 The case was set for trial in late 2017, but Defendant failed to appear for trial

 on that date. Due to Defendant’s failure to appear, he was arrested in 2019 and his

 case proceeded towards trial. At a pretrial hearing, Defendant was heard on a Motion

 to Dismiss pursuant to N.C.G.S. § 15A-954(a)(4), alleging flagrant violations of his

 constitutional rights to equal protection, due process, and protection from cruel and

 unusual punishment under the United States Constitution and the North Carolina

 Constitution as a result of being prosecuted as an adult in Superior Court.

 jurisdiction to Superior Court. See N.C.G.S. § 7B-2200.5(b) (2019) (“If the juvenile was 16
 years of age or older at the time the juvenile allegedly committed an offense that would be a
 Class H or I felony if committed by an adult, after notice, hearing, and a finding of probable
 cause, the court may, upon motion of the prosecutor or the juvenile’s attorney or upon its own
 motion, transfer jurisdiction over a juvenile to [S]uperior [C]ourt pursuant to [N.C.G.S. §]
 7B-2203.”). N.C.G.S. § 7B-2203(b) includes eight factors for the Juvenile Court to consider
 in determining “whether the protection of the public and the needs of the juvenile will be
 served by transfer of the case to [S]uperior [C]ourt[.]” See N.C.G.S. § 7B-2203(b) (2019).
 2 For ease of reading, we refer to the District Court as “Juvenile Court.”
 STATE V. GARRETT

 2021-NCCOA-591

 Opinion of the Court

¶5 After analyzing the constitutionality of Defendant’s prosecution as an adult for

 crimes he allegedly committed while sixteen years old, the trial court granted

 Defendant’s Motion to Dismiss and memorialized its ruling in its Order Granting

 Defendant’s Motion to Dismiss (“Order”). The Order included the following “findings

 of fact”:

 1. Halo Garrett, hereinafter Defendant, is charged with
 Breaking and/or Entering and Larceny after Breaking
 and/or Entering in 15CRS245691 and 15CRS245692.

 2. Breaking and/or Entering is a class H felony and Larceny
 after Breaking and/or Entering is a class H felony.

 3. The State alleges that on [13 December 2015], Defendant
 broke into the apartment of [the alleged victim] and stole
 items from within.

 4. Defendant was born on [24 September 1999] and was
 sixteen at the time of this alleged offense.

 5. Defendant’s cases were originally scheduled for trial
 during the fall of 2017, but Defendant failed to appear for
 calendar call. The State called the case for trial on [14
 August 2019], after Defendant had been arrested on the
 Order for Arrest from the missed court date.

 6. North Carolina is currently the last state in the country
 to automatically prosecute sixteen- and seventeen- year-
 olds as adults.

 7. In 2017, the Juvenile Justice Reinvestment Act passed
 with bipartisan support. In N.C.G.S. [§] 7B-1601, The
 Juvenile Justice Reinvestment Act increased the age of
 [J]uvenile [C]ourt jurisdiction to eighteen effective [1
 December 2019]. For class H and I felonies committed by
 sixteen-year-olds, the court must affirmatively find after
 STATE V. GARRETT

 2021-NCCOA-591

 Opinion of the Court

hearing that “the protection of the public and the needs of
the juvenile will be served by transfer to [S]uperior
[C]ourt;” otherwise the [J]uvenile [C]ourt retains exclusive
jurisdiction.

8. Despite Defendant’s age at the time of the alleged
offense, he is not eligible for [J]uvenile [C]ourt under
N.C.G.S. [§] 7B-1601 because the law does not go into effect
until [1 December 2019].

9. In juvenile transfer hearings, the court must consider
eight factors in determining whether a case should remain
in [J]uvenile [C]ourt or be transferred to adult court. Those
eight factors are the age of the juvenile, the maturity of the
juvenile, the intellectual functioning of the juvenile, the
prior record of the juvenile, prior attempts to rehabilitate
the juvenile, facilities or programs available to the court
prior to the expiration of the court’s jurisdiction and the
potential benefit to the juvenile of treatment or
rehabilitation, the manner in which the offense was
committed, and the seriousness of the offense and
protection of the public.

10. In a 2015 report issued by the North Carolina
Commission on the Administration of Law, the
Commission compared adult and juvenile criminal
proceedings. Juveniles prosecuted in adult court face
detention in jail and the heightened risk of sexual violence
posed to youthful inmates, no requirement of parental
notice or involvement, active time in adult prison, risk of
physical violence, public records of arrest, prosecution and
conviction, and collateral consequences imposed by a
conviction. Juvenile [C]ourt, on the other hand, requires an
evaluation of a complaint that includes interviews with
juveniles and parents, mandatory parental involvement,
individualized consequences, treatment, training and
rehabilitation, monthly progress meetings, and a
confidential record of delinquency proceedings.

11. Defendant alleged that his constitutional rights have
 STATE V. GARRETT

 2021-NCCOA-591

 Opinion of the Court

been flagrantly violated and that there is such irreparable
prejudice to Defendant’s preparation of his case that there
is no remedy but to dismiss the prosecution under N.C.G.S.
[§] 15A-954(a)(4).

12. Defendant alleged three grounds under which his
constitutional rights have been violated. Each ground
would be sufficient for dismissal under N.C.G.S. [§] 15A-
954(a)(4). The three grounds are cruel and unusual
punishment under the [Eighth] Amendment, violation of
Defendant’s due process rights, and a violation of
Defendant’s equal protection rights. Defendant asserted
his rights under the corresponding provisions of the North
Carolina Constitution as stated in his Motion.

13. Defendant alleged that his [Eighth] Amendment rights
have been violated in that his prosecution in adult court for
an offense allegedly committed when he was sixteen
constitutes cruel and unusual punishment.

14. The [Eighth] Amendment draws its meaning from the
evolving standards of decency that mark the progress of a
maturing society.

15. The [United States] Supreme Court has addressed the
treatment of juveniles in the criminal justice system in a
recent line of cases.

16. In its analysis in this line of cases, the Court looked to
the consensus of legislative action in states around the
country because consistency in the direction of change is
powerful evidence of evolving standards of decency.

17. Every state in the country to have addressed the age of
juvenile prosecution has raised the age, not lowered it or
left it the same.

18. The Supreme Court held in Roper v. Simmons, 543 U.S.
551 (2005) that American society views juveniles as
categorically less culpable than adult offenders due to their
 STATE V. GARRETT

 2021-NCCOA-591

 Opinion of the Court

lack of maturity and underdeveloped sense of
responsibility, vulnerability to negative influences and
outside pressures, and malleable character.

19. In Roper, the Court held that in regard to juveniles, the
death penalty did not serve its intended aims of deterrence
or retribution.

20. In Graham v. Florida, 560 U.S. 48 (2010), the Court
held that juveniles convicted of non-homicidal offenses
should not be sentenced to life without parole.

21. In Miller v. Alabama, 567 U.S. 460 (2012), the Supreme
Court held that sentencing juvenile defendants to
mandatory life in prison without parole violated the
[Eighth] Amendment.

22. In Montgomery v. Louisiana, 577 U.S. ___ (2016), the
Supreme Court held that Miller applied retroactively to
defendants sentenced to life without parole prior to 2012
and that hearings could be conducted in these cases to
consider eligibility for parole status.

23. The [caselaw] discussed in the Report and in the cases
cited heavily on scientific research. The scientific research
indicates that the development of neurobiological systems
in the adolescent brain cause teens to engage in greater
risk-taking behavior; that teenage brains are not mature
enough to adequately govern self-regulation and impulse
control; that teens are more susceptible to peer influence
than adults; that teens have a lesser capacity to assess
long-term consequences; that as teens mature, they become
more able to think to the future; and that teens are less
responsive to the threat of criminal sanctions.

24. Defendant alleges that his due process rights have been
violated in that he has been automatically prosecuted in
adult criminal court without a hearing and findings in
support of transfer.
 STATE V. GARRETT

 2021-NCCOA-591

 Opinion of the Court

25. As of [1 December 2019], North Carolina will no longer
permit a sixteen-year-old charged with class H felonies to
be automatically prosecuted, tried and sentenced as an
adult.

26. In Kent v. United States, 383 U.S. 541 (1966), the
Supreme Court held that the process of transferring a
juvenile to adult court is one with such tremendous
consequences that it should require attendant ceremony
such as a hearing, assistance of counsel, and a statement
of reasons.

27. Defendant alleges that his right to equal protection
under the Constitution has been violated.

28. The Equal Protection clause of the Constitution
protects against disparity in treatment by a State between
classes of individuals with largely indistinguishable
circumstances.

29. Legislation is presumed valid and will be sustained if
classification is rationally related to a legitimate state
interest.

30. A criminal statute is invalid under the NC Constitution
if it provides different punishment for the same acts
committed under the same circumstances by persons in
like situations.

31. There is no rational basis for distinguishing between
automatic prosecution and punishment of Defendant in
adult court now and punishment of a sixteen-year-old after
[1 December 2019].

32. Each of the constitutional violations raised by
Defendant and found by the [trial court] have caused
irreparable prejudice to Defendant in that the State has
denied Defendant the age-appropriate procedures of
[J]uvenile [C]ourt and, correspondingly, exposed him to the
more punitive direct and collateral consequences of adult
 STATE V. GARRETT

 2021-NCCOA-591

 Opinion of the Court

 court.

¶6 The Order included the following “conclusions of law”:

 1. The holding in State v. Wilkerson, [232 N.C. App. 482,
 753 S.E.2d 829] (2014), is not controlling and the
 underlying rationale is not applicable to the case at bar.

 2. That Defendant is not covered by the [Juvenile Justice
 Reinvestment Act] in North Carolina; however, based upon
 the same reasoning that went into the [Juvenile Justice
 Reinvestment Act], “evolving standards of decency,” and
 the reasoning contained in the cases cited by [] Defendant,
 that his prosecution in adult court violates his rights.

 3. By his being prosecuted as an adult in this case,
 Defendant’s [Eighth] Amendment right against cruel and
 unusual punishment is being violated.

 4. By his being prosecuted as an adult in this case,
 Defendant’s right to due process is being violated.

 5. By his being prosecuted as an adult in this case,
 Defendant’s right to equal protection under the laws is
 being violated.

 6. Once an equal protection violation has been established,
 the burden shifts to the State to demonstrate an inability
 to remedy the violation in a timely fashion.

 7. The State did not meet its burden in this case.

 8. As a result of the continuing attempts to prosecute []
 Defendant as an adult in these cases, Defendant’s
 constitutional rights have been flagrantly violated and
 there is such irreparable prejudice to [] Defendant’s
 preparation of his case that there is no remedy but to
 dismiss the prosecution pursuant to N.C.G.S. [§] 15A-954.

 9. Defendant is being deprived of his right to be treated as
 a juvenile, which he was at the time he allegedly committed
 STATE V. GARRETT

 2021-NCCOA-591

 Opinion of the Court

 these crimes, with all of the attendant benefits granted to
 juveniles to reform their lives.

 10. That Assistant District Attorney, on behalf of the State,
 has had an opportunity to review these FINDINGS OF
 FACT[], CONCLUSIONS OF LAW AND ORDER.

¶7 In the Order, the trial court concluded Defendant’s constitutional rights to

 equal protection, protection from cruel and unusual punishment, and due process

 were violated by the prosecution of Defendant as an adult. The trial court went on to

 conclude the loss of the benefits of Juvenile Court irreparably prejudiced the

 preparation of his case such that dismissal was the only remedy. The State timely

 appealed in accordance with N.C.G.S. § 15A-1445(a)(1). See N.C.G.S. § 15A-

 1445(a)(1) (2019) (permitting the State to appeal from the Superior Court to the

 appellate division when “there has been a decision or judgment dismissing criminal

 charges as to one or more counts”).

 ANALYSIS

¶8 On appeal, the State challenges the trial court’s grant of Defendant’s Motion

 to Dismiss pursuant to N.C.G.S. § 15A-954(a)(4), contending there were no flagrant

 violations of Defendant’s constitutional rights and no irreparable prejudice to the

 preparation of his case requiring dismissal. The State challenges Findings of Fact

 14-31 and Conclusions of Law 3-9. Some of these challenged findings of fact may be

 erroneous, or more properly characterized as conclusions of law. However, for the

 purposes of our analysis we assume, without deciding, that all findings of fact
 STATE V. GARRETT

 2021-NCCOA-591

 Opinion of the Court

 properly characterized as such were supported by competent evidence. Additionally,

 we treat any findings of fact that are more properly characterized as conclusions of

 law as such, rather than as binding findings of fact. See State v. Campola, 258 N.C.

 App. 292, 298, 812 S.E.2d 681, 687 (2018) (“If the trial court labels as a finding of fact

 what is in substance a conclusion of law, we review that ‘finding’ de novo.”).3 We

 reverse the Order as Defendant’s constitutional rights were not violated, let alone

 flagrantly violated.

¶9 Defendant’s Motion to Dismiss was made pursuant to N.C.G.S. § 15A-954(a)(4),

 which reads:

 (a) The court on motion of the defendant must dismiss the
 charges stated in a criminal pleading if it determines that:

 ....

 (4) The defendant’s constitutional rights have been
 flagrantly violated and there is such irreparable prejudice
 to the defendant’s preparation of his case that there is no
 remedy but to dismiss the prosecution.

 N.C.G.S. § 15A-954(a)(4) (2019). “As the movant, [D]efendant bears the burden of

 showing the flagrant constitutional violation and of showing irreparable prejudice to

 the preparation of his case. This statutory provision ‘contemplates drastic relief,’

 3 While other findings of fact in the Order may be properly characterized as
 conclusions of law, we specifically note that Finding of Fact 31 is more properly characterized
 as a conclusion of law. See In re Helms, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997)
 (citations omitted) (holding “any determination requiring the exercise of judgment or the
 application of legal principles is more properly classified a conclusion of law”).
 STATE V. GARRETT

 2021-NCCOA-591

 Opinion of the Court

 such that ‘a motion to dismiss under its terms should be granted sparingly.’” State v.

 Williams, 362 N.C. 628, 634, 669 S.E.2d 290, 295 (2008) (quoting State v. Joyner, 295

 N.C. 55, 59, 243 S.E.2d 367, 370 (1978)).

¶ 10 In reviewing motions to dismiss made pursuant to N.C.G.S. § 15A-954(a)(4),

 our Supreme Court has applied the following relevant principles:

 The decision that [a] defendant has met the statutory
 requirements of N.C.G.S. § 15A-954(a)(4) and is entitled to
 a dismissal of the charge against him is a conclusion of law.
 Conclusions of law drawn by the trial court from its
 findings of fact are reviewable de novo on appeal. Under a
 de novo review, the court considers the matter anew and
 freely substitutes its own judgment for that of the lower
 tribunal.

 Williams, 362 N.C. at 632-33, 669 S.E.2d at 294 (marks and citations omitted).

¶ 11 In terms of flagrant constitutional violations, the trial court concluded:

 3. By his being prosecuted as an adult in this case,
 Defendant’s [Eighth] Amendment right against cruel and
 unusual punishment is being violated.

 4. By his being prosecuted as an adult in this case,
 Defendant’s right to due process is being violated.

 5. By his being prosecuted as an adult in this case,
 Defendant’s right to equal protection under the laws is
 being violated.

 The trial court specifically found that “[e]ach of the constitutional violations raised

 by Defendant and found by the [trial court] have caused irreparable prejudice to

 Defendant in that the State has denied Defendant the age-appropriate procedures of
 STATE V. GARRETT

 2021-NCCOA-591

 Opinion of the Court

 [J]uvenile [C]ourt and, correspondingly, exposed him to the more punitive direct and

 collateral consequences of adult court.” As a result, each of the constitutional

 violations independently supported the trial court’s ruling, and each constitutional

 violation must be addressed.

 A. Equal Protection

¶ 12 Here, the trial court found an equal protection violation based on the lack of a

 rational basis for treating sixteen-year-old juveniles differently depending on the date

 of the alleged Class H felony. Sixteen-year-old juveniles alleged to have committed a

 Class H felony before the effective date of the Juvenile Justice Reinvestment Act, like

 Defendant, are automatically prosecuted as adults in Superior Court; whereas,

 sixteen-year-old juveniles alleged to have committed a Class H felony after the

 effective date of the Juvenile Justice Reinvestment Act are initially prosecuted in

 Juvenile Court, and then a determination is made as to whether the juvenile should

 be prosecuted as an adult in Superior Court.

¶ 13 “[T]he Fourteenth Amendment does not forbid statutes and statutory changes

 to have a beginning, and thus to discriminate between the rights of an earlier and

 later time.” Sperry & Hutchinson Co. v. Rhodes, 220 U.S. 502, 505, 55 L. Ed. 561,

 563 (1911).

¶ 14 The basis of the alleged equal protection violation here is unpersuasive. In

 State v. Howren, our Supreme Court addressed a claimed equal protection violation
 STATE V. GARRETT

 2021-NCCOA-591

 Opinion of the Court

 based on “the fact that after 1 January 1985 an individual charged with driving while

 impaired must [have been] given two chemical breath analyses[,]” whereas at the

 time of the appeal “only one analysis [was] required, and [the] defendant was only

 given one breathalyzer test.” State v. Howren, 312 N.C. 454, 457, 323 S.E.2d 335, 337

 (1984). Our Supreme Court held:

 A statute is not subject to the [E]qual [P]rotection [C]lause
 of the [F]ourteenth [A]mendment of the United States
 Constitution or [A]rticle I § 19 of the North Carolina
 Constitution unless it creates a classification between
 different groups of people. In this case no classification
 between different groups has been created. All individuals
 charged with driving while impaired before 1 January 1985
 will be treated in exactly the same way as will all
 individuals charged after 1 January 1985. The statute
 merely treats the same group of people in different ways at
 different times. It is applied uniformly to all members of
 the public and does not discriminate against any group. If
 [the] defendant’s argument were accepted the State would
 never be able to create new safeguards against error in
 criminal prosecutions without invalidating prosecutions
 conducted under prior less protective laws. Article I § 19
 and the [E]qual [P]rotection [C]lause do not require such
 an absurd result.

 Id. at 457-58, 323 S.E.2d at 337-38.

¶ 15 Defendant’s claimed equal protection violation here is based on the same

 principle as the claimed equal protection violation our Supreme Court rejected in

 Howren—that treating the same group of people differently at different times

 constitutes an equal protection violation. Defendant’s equal protection rights were
 STATE V. GARRETT

 2021-NCCOA-591

 Opinion of the Court

 not violated where no classification was created between different groups of people,

 and we reverse the Order as to the equal protection violation.

 B. Cruel and Unusual Punishment

¶ 16 Here, the trial court concluded “[b]y his being prosecuted as an adult in this

 case, Defendant’s [Eighth] Amendment right against cruel and unusual punishment

 is being violated.” Defendant’s Motion to Dismiss contended his right to be protected

 from cruel and/or unusual punishment was violated under the North Carolina

 Constitution and the United States Constitution and stated “our Court ‘historically

 has analyzed cruel and/or unusual punishment claims by criminal defendants the

 same under both the [F]ederal and [S]tate Constitutions.’” In a footnote in his Motion

 to Dismiss, Defendant contended “North Carolina’s ‘cruel or unusual’ clause is

 broader than the federal ‘cruel and unusual’ one[,]” but then stated “[Defendant] is

 entitled to relief under the narrower ‘cruel and unusual’ punishment formulation and

 will focus his arguments there.”

¶ 17 We have held:

 Article I, Section 27 of the North Carolina Constitution
 prohibits the infliction of “cruel or unusual punishments.”
 N.C. Const. art. I, § 27. The wording of this provision
 differs from the language of the Eighth Amendment, which
 prohibits the infliction of “cruel and unusual
 punishments.” U.S. Const. amend. VIII.

 Despite this difference in the wording of the two provisions,
 however, our Supreme Court historically has analyzed
 STATE V. GARRETT

 2021-NCCOA-591

 Opinion of the Court

 cruel and/or unusual punishment claims by criminal
 defendants the same under both the [F]ederal and [S]tate
 Constitutions. Thus, because we have determined that
 [the] [d]efendant’s sentence does not violate the Eighth
 Amendment, we likewise conclude it passes muster under
 Article I, Section 27 of the North Carolina Constitution.

 State v. Seam, 263 N.C. App. 355, 365, 823 S.E.2d 605, 612 (2018) (marks and

 citations omitted), aff’d per curiam, 373 N.C. 529, 837 S.E.2d 870 (2020). Accordingly,

 we only analyze this issue under the United States Constitution as it applies with

 equal force to the North Carolina Constitution.

¶ 18 As an initial matter, the State argues the trial court should not have applied

 the Eighth Amendment to the present case because Defendant had not been punished

 at the time of the motion.

 Eighth Amendment scrutiny is appropriate only after the
 State has complied with the constitutional guarantees
 traditionally associated with criminal prosecutions. Thus,
 in Trop v. Dulles, [356 U.S. 86, 2 L. Ed. 2d 630] (1958), the
 plurality appropriately took the view that
 denationalization was an impermissible punishment for
 wartime desertion under the Eighth Amendment, because
 desertion already had been established at a criminal trial.
 But in Kennedy v. Mendoza-Martinez, [372 U.S. 144, 9 L.
 Ed. 2d 44] (1963), where the Court considered
 denationalization as a punishment for evading the draft,
 the Court refused to reach the Eighth Amendment issue,
 holding instead that the punishment could be imposed only
 through the criminal process. As these cases demonstrate,
 the State does not acquire the power to punish with which
 the Eighth Amendment is concerned until after it has
 secured a formal adjudication of guilt in accordance with
 due process of law. Where the State seeks to impose
 STATE V. GARRETT

 2021-NCCOA-591

 Opinion of the Court

 punishment without such an adjudication, the pertinent
 constitutional guarantee is the Due Process Clause of the
 Fourteenth Amendment.

 Ingraham v. Wright, 430 U.S. 651, 671 n.40, 51 L. Ed. 2d 711, 730 n.40 (1977)

 (emphasis added) (citations omitted); see also Moore v. Evans, 124 N.C. App. 35, 51,

 476 S.E.2d 415, 426-27 (1996) (citation omitted) (“In a related argument, [the

 plaintiff] further contends that [the] defendants violated his Eighth Amendment

 right to be free from cruel and unusual punishment. The United States Supreme

 Court stated in Ingraham v. Wright, ‘An examination of the history of the [Eighth]

 Amendment and the decisions of this Court construing the proscription against cruel

 and unusual punishment confirms that it was designed to protect those convicted of

 crimes.’ Therefore, we find that the Eighth Amendment is inapplicable to the present

 case, as [the plaintiff] was never formally adjudicated guilty of any crime.”).

¶ 19 Defendant contends, however, that being automatically tried as an adult is

 covered by the Eighth Amendment, which in part “imposes substantive limits on

 what can be made criminal and punished as such[.]” See Ingraham, 430 U.S. at 667,

 51 L. Ed. 2d at 728. Ingraham stated:

 [T]he Cruel and Unusual Punishments Clause
 circumscribes the criminal process in three ways: First, it
 limits the kinds of punishment that can be imposed on
 those convicted of crimes; second, it proscribes punishment
 grossly disproportionate to the severity of the crime; and
 third, it imposes substantive limits on what can be made
 criminal and punished as such. We have recognized the
 STATE V. GARRETT

 2021-NCCOA-591

 Opinion of the Court

 last limitation as one to be applied sparingly. The primary
 purpose of the Cruel and Unusual Punishments Clause has
 always been considered, and properly so, to be directed at
 the method or kind of punishment imposed for the violation
 of criminal statutes.

 Id. at 667, 51 L. Ed. 2d at 727-28 (citations and marks omitted) (emphasis added).

 The United States Supreme Court then referred to Robinson v. California as an

 example of the third category. Id. at 667, 51 L. Ed. 2d at 728 (citing Robinson v.

 California, 370 U.S. 660, 8 L. Ed. 2d 758 (1962)).

¶ 20 In Robinson, the United State Supreme Court held that a statute, making the

 illness of being addicted to narcotics a criminal offense, violated the Eighth

 Amendment, reasoning:

 This statute, therefore, is not one which punishes a person
 for the use of narcotics, for their purchase, sale or
 possession, or for antisocial or disorderly behavior
 resulting from their administration. It is not a law which
 even purports to provide or require medical treatment.
 Rather, we deal with a statute which makes the “status” of
 narcotic addiction a criminal offense, for which the offender
 may be prosecuted “at any time before he reforms.”
 California has said that a person can be continuously guilty
 of this offense, whether or not he has ever used or
 possessed any narcotics within the State, and whether or
 not he has been guilty of any antisocial behavior there.

 It is unlikely that any State at this moment in history
 would attempt to make it a criminal offense for a person to
 be mentally ill, or a leper, or to be afflicted with a venereal
 disease. A State might determine that the general health
 and welfare require that the victims of these and other
 human afflictions be dealt with by compulsory treatment,
 STATE V. GARRETT

 2021-NCCOA-591

 Opinion of the Court

 involving quarantine, confinement, or sequestration. But,
 in the light of contemporary human knowledge, a law
 which made a criminal offense of such a disease would
 doubtless be universally thought to be an infliction of cruel
 and unusual punishment in violation of the Eighth and
 Fourteenth Amendments.

 We cannot but consider the statute before us as of the same
 category. In this Court counsel for the State recognized
 that narcotic addiction is an illness. Indeed, it is
 apparently an illness which may be contracted innocently
 or involuntarily. We hold that a state law which imprisons
 a person thus afflicted as a criminal, even though he has
 never touched any narcotic drug within the State or been
 guilty of any irregular behavior there, inflicts a cruel and
 unusual punishment in violation of the Fourteenth
 Amendment. To be sure, imprisonment for ninety days is
 not, in the abstract, a punishment which is either cruel or
 unusual. But the question cannot be considered in the
 abstract. Even one day in prison would be a cruel and
 unusual punishment for the “crime” of having a common
 cold.

 Robinson, 370 U.S. at 666-67, 8 L. Ed. 2d at 762-63 (citation and footnotes omitted).

¶ 21 We do not identify Defendant being tried as an adult, pursuant to N.C.G.S. §

 7B-1604(a) (2015), to be of the same character as a person’s illness being criminalized,

 and it does not trigger the Eighth Amendment’s “[imposition of] substantive limits on

 what can be made criminal and punished as such[.]” Ingraham, 430 U.S. at 667, 51

 L. Ed. 2d at 728. As an initial matter, our research has not revealed any North

 Carolina or United State Supreme Court decision applying the above principle from

 Robinson outside of the status of addiction to drugs or alcohol. See, e.g., Powell v.
 STATE V. GARRETT

 2021-NCCOA-591

 Opinion of the Court

 Texas, 392 U.S. 514, 532, 20 L. Ed. 2d 1254, 1267 (holding a conviction for being drunk

 in public was not in the same category discussed in Robinson, as “[t]he State of Texas

 [] [did] not [seek] to punish a mere status, as California did in Robinson; nor [did] it

 attempt[] to regulate [the] appellant’s behavior in the privacy of his own home.

 Rather, it has imposed upon [the] appellant a criminal sanction for public behavior

 which may create substantial health and safety hazards, both for [the] appellant and

 for members of the general public, and which offends the moral and esthetic

 sensibilities of a large segment of the community”), reh’g denied, 393 U.S. 898, 21 L.

 Ed. 2d 185 (1968). Further, the prosecution of juveniles as adults does not involve

 the substance of what is made criminal, and instead involves the procedure taken

 regarding a criminal offense alleged against juveniles. Here, the substance is

 properly criminally punished as Defendant was charged with felonious breaking and

 entering and larceny after breaking or entering, offenses that are undoubtedly within

 the police powers of North Carolina. The situation Defendant faces here cannot be

 said to be analogous to Robinson because his prosecution as an adult does not

 criminalize a status, but instead punishes criminal behavior by juveniles according

 to the procedures in place at the time of the offense.

¶ 22 Defendant has no claim under the Eighth Amendment. Instead, to the extent

 Defendant claims the State punished him prior to a conviction, this claim properly
 STATE V. GARRETT

 2021-NCCOA-591

 Opinion of the Court

 falls under due process.4 On this basis, we reverse the Order as to the cruel and

 unusual punishment violation.

 C. Due Process

¶ 23 Relying on Kent v. United States, 383 U.S. 541, 16 L. Ed. 2d 84 (1966), the trial

 court concluded Defendant’s due process rights were violated because he was

 automatically prosecuted as an adult in this case “without a hearing and findings in

 support of transfer.” As it was unclear whether the trial court’s conclusion included

 both procedural and substantive due process, we analyze both.

 Our courts have long held that the law of the land clause
 has the same meaning as due process of law under the
 Federal Constitution. Due process provides two types of
 protection for individuals against improper governmental
 action. Substantive due process protection prevents the
 government from engaging in conduct that shocks the
 conscience, or interferes with rights implicit in the concept
 of ordered liberty. Procedural due process protection
 ensures that when government action depriving a person
 of life, liberty, or property survives substantive due process
 review, that action is implemented in a fair manner.

 Substantive due process is a guaranty against arbitrary
 legislation, demanding that the law shall not be
 unreasonable, arbitrary or capricious, and that the law be
 substantially related to the valid object sought to be
 obtained. Thus, substantive due process may be
 characterized as a standard of reasonableness, and as such
 it is a limitation upon the exercise of the police power.

 The fundamental premise of procedural due process

 4 We note Defendant did not make an argument recognizing this distinction at the

 trial court or on appeal.
 STATE V. GARRETT

 2021-NCCOA-591

 Opinion of the Court

 protection is notice and the opportunity to be heard.
 Moreover, the opportunity to be heard must be at a
 meaningful time and in a meaningful manner.

 In order to determine whether a law violates substantive
 due process, we must first determine whether the right
 infringed upon is a fundamental right. If the right is
 constitutionally fundamental, then the court must apply a
 strict scrutiny analysis wherein the party seeking to apply
 the law must demonstrate that it serves a compelling state
 interest. If the right infringed upon is not fundamental in
 the constitutional sense, the party seeking to apply it need
 only meet the traditional test of establishing that the law
 is rationally related to a legitimate state interest.

 State v. Fowler, 197 N.C. App. 1, 20-21, 676 S.E.2d 523, 540-41 (2009) (marks and

 citations omitted), disc. rev. denied, appeal dismissed, 364 N.C. 129, 696 S.E.2d 695

 (2010). “The requirements of procedural due process apply only to the deprivation of

 interests encompassed by the Fourteenth Amendment’s protection of liberty and

 property.” Johnston v. State, 224 N.C. App. 282, 305, 735 S.E.2d 859, 875 (2012),

 aff’d per curiam, 367 N.C. 164, 749 S.E.2d 278 (2013). “Once a protected life, liberty,

 or property interest has been demonstrated, the Court must inquire further and

 determine exactly what procedure or ‘process’ is due.” State v. Stines, 200 N.C. App.

 193, 196, 683 S.E.2d 411, 413 (2009) (marks omitted).

¶ 24 Here, the trial court did not clearly find the existence of a fundamental right

 or a protected interest; however, it did cite Kent v. United States in its discussion of

 due process. See Kent, 383 U.S. at 544, 16 L. Ed. 2d at 88. To the extent that the
 STATE V. GARRETT

 2021-NCCOA-591

 Opinion of the Court

 trial court concluded a fundamental right to or a protected interest in being

 prosecuted as a juvenile existed, it erred. Defendant does not present, and our

 research does not reveal, any case that holds there is a protected interest in, or

 fundamental right related to, being tried as a juvenile in criminal cases, as opposed

 to being tried as an adult. We decline to create such a right under the veil of the

 penumbra of due process.

¶ 25 Further, Kent, which the trial court and Defendant cite, is not controlling or

 instructive on the issues raised by Defendant. In Kent, a sixteen-year-old boy was

 charged with housebreaking, robbery, and rape. Id. at 543-44, 16 L. Ed. 2d at 87-88.

 At that time, according to the applicable statutes in Washington, D.C., the juvenile

 court had exclusive jurisdiction over the petitioner due to his age; however, the

 juvenile court could elect to waive jurisdiction and transfer jurisdiction to the district

 court after a full investigation. Id. at 547-48, 16 L. Ed. 2d at 90. After the petitioner’s

 attorney filed a motion in opposition to the juvenile court’s waiver of jurisdiction, the

 juvenile court, without ruling on the motion, holding a hearing, or conferring with

 the petitioner, entered an order transferring jurisdiction to the district court that

 contained no findings or reasoning. Id. at 545-46, 16 L. Ed. 2d at 88-89. The United

 States Supreme Court held:

 [The] petitioner–then a boy of 16–was by statute entitled to
 certain procedures and benefits as a consequence of his
 statutory right to the “exclusive” jurisdiction of the
 STATE V. GARRETT

 2021-NCCOA-591

 Opinion of the Court

 [j]uvenile [c]ourt. In these circumstances, considering
 particularly that decision as to waiver of jurisdiction and
 transfer of the matter to the [d]istrict [c]ourt was
 potentially as important to [the] petitioner as the
 difference between five years’ confinement and a death
 sentence, we conclude that, as a condition to a valid waiver
 order, [the] petitioner [was] entitled to a hearing, including
 access by his counsel to the social records and probation or
 similar reports which presumably are considered by the
 court, and to a statement of reasons for the [j]uvenile
 [c]ourt’s decision. We believe that this result is required by
 the statute read in the context of constitutional principles
 relating to due process and the assistance of counsel.

 Id. at 557, 16 L. Ed. 2d at 95 (emphases added).

¶ 26 Based on this language, in the context of the facts of Kent, we conclude Kent

 involved a completely distinct factual situation at the outset—there, the petitioner

 was statutorily entitled to begin his proceedings within the exclusive jurisdiction of

 the juvenile court; whereas, here, under N.C.G.S. § 7B-1604(a) (2015), Defendant’s

 proceedings began in Superior Court. This statutory distinction is critical because

 the United States Supreme Court in Kent explicitly based its holding on due process’s

 interaction with the requirements of the applicable statute. Id. Furthermore, it is

 clear Kent does not require a hearing and findings to support trying any juvenile as

 an adult; instead, Kent requires hearings and findings to support the transfer of a

 juvenile from juvenile court to adult court when that is the existing statutory scheme.

 Id. Kent did not create a fundamental constitutional right or constitutionally

 protected interest to a juvenile hearing or being tried as a juvenile. Furthermore, our
 STATE V. GARRETT

 2021-NCCOA-591

 Opinion of the Court

 Supreme Court, in interpreting Kent, has stated:

 In Kent, the Supreme Court enunciated a list of factors for
 the Juvenile Court of the District of Columbia to consider
 in making transfer decisions. . . . [I]t is important to note
 that the Supreme Court nowhere stated in Kent that the
 above factors were constitutionally required. In appending
 this list of factors [to consider in making transfer
 determinations] to its opinion, the Kent Court was merely
 exercising its supervisory role over the inferior court created
 by Congress for the District of Columbia. Thus, the factors
 in the Appendix to Kent have no binding effect on this
 Court.

 State v. Green, 348 N.C. 588, 600-01, 502 S.E.2d 819, 826-27 (1998) (emphases added),

 cert. denied, 525 U.S. 1111, 142 L. Ed. 2d 783 (1999), superseded by statute on other

 ground as stated in In re J.L.W., 136 N.C. App. 596, 525 S.E.2d 500 (2000). Our

 Supreme Court’s interpretation of Kent in Green, as not concerning constitutionally

 required factors for the transfer of juveniles from juvenile court to adult court, further

 supports our conclusion that Kent was not concerned with constitutional

 requirements. Id.

¶ 27 The trial court clearly considered Kent in concluding that Defendant’s due

 process rights were violated. The only other finding of fact that the trial court used

 to support the conclusion of law related to due process stated “[a]s of [1 December

 2019], North Carolina will no longer permit a sixteen-year-old charged with class H

 Felonies to be automatically prosecuted, tried and sentenced as an adult.” This

 finding alone does not support concluding that Defendant’s due process rights were
 STATE V. GARRETT

 2021-NCCOA-591

 Opinion of the Court

 violated. Further, the Order does not otherwise conduct the required steps of a due

 process analysis, as there was no finding or conclusion that the statute impacted a

 fundamental right, implicating enhanced scrutiny under substantive due process, or

 deprived Defendant of “a protected life, liberty, or property interest[,]” implicating

 procedural due process protections. Stines, 200 N.C. App. at 196, 683 S.E.2d at 413.

¶ 28 There was not a protected interest at issue before the trial court and

 Defendant’s procedural due process protections were not implicated. See Bd. of

 Regents of State Colleges v. Roth, 408 U.S. 564, 569, 33 L. Ed. 2d 548, 556 (1972) (“The

 requirements of procedural due process apply only to the deprivation of interests

 encompassed by the Fourteenth Amendment's protection of liberty and property.”).

 Additionally, turning to substantive due process, as there is not a fundamental right

 at issue here, we apply the rational basis test. See Fowler, 197 N.C. App. at 21, 676

 S.E.2d at 540-41. “The ‘rational basis’ standard merely requires that the

 governmental classification bear some rational relationship to a conceivable

 legitimate interest of government.” White v. Pate, 308 N.C. 759, 766-67, 304 S.E.2d

 199, 204 (1983).

 [U]nless legislation involves a suspect classification or
 impinges upon fundamental personal rights, the mere
 rationality standard applies and the law in question will be
 upheld if it has any conceivable rational basis. Moreover,
 the deference afforded to the government under the
 rational basis test is so deferential that a court can uphold
 the regulation if the court can envision some rational basis
 STATE V. GARRETT

 2021-NCCOA-591

 Opinion of the Court

 for the classification.

 Clayton v. Branson, 170 N.C. App. 438, 455, 613 S.E.2d 259, 271 (marks omitted),

 disc. rev. denied, 360 N.C. 174, 625 S.E.2d 785 (2005).

¶ 29 Here, there is a rational basis for the statute, despite the trial court’s finding

 otherwise in Finding of Fact 31.5 North Carolina has a legitimate interest in

 promoting the permanency of a sentence, and also has a legitimate interest in

 updating statutes to reflect changing ideals of fairness. See Engle v. Isaac, 456 U.S.

 107, 127, 71 L. Ed. 2d 783, 800, reh’g denied, 456 U.S. 1001, 73 L. Ed. 2d 1296 (1982).

 The change the General Assembly made to increase the age at which a person is

 treated as a juvenile is rationally related to the State’s legitimate interests in having

 statutes that reflect current ideals of fairness, as the statute directly effectuates the

 legitimate interest in having fair sentencing statutes. The decision to prosecute and

 sentence juveniles under the statutory scheme in place at the time they commit their

 offense is rationally related to the State’s legitimate interest in having clear criminal

 statutes that are enforced consistently with their contemporaneous statutory

 5 The State challenges Finding of Fact 31 in its brief. Additionally, Finding of Fact 31

 is more properly classified as a conclusion of law because it requires the application of legal
 principles. See In re Helms, 127 N.C. App. at 510, 491 S.E.2d at 675 (citations omitted)
 (holding “any determination requiring the exercise of judgment or the application of legal
 principles is more properly classified a conclusion of law”). As a conclusion of law, we review
 whether there was a rational basis for this statute de novo. See Williams, 362 N.C. at 632,
 669 S.E.2d at 294 (“Conclusions of law drawn by the trial court from its findings of fact are
 reviewable de novo on appeal.”).
 STATE V. GARRETT

 2021-NCCOA-591

 Opinion of the Court

 scheme.6 Prosecuting Defendant as an adult within the jurisdiction of the Superior

 Court was not a violation of substantive or procedural due process based simply upon

 the findings of fact regarding an impending change in how juveniles are prosecuted

 under the law and Kent, which held that a violation of due process occurred when a

 juvenile’s statutory right to the juvenile court having exclusive jurisdiction was

 violated without any hearing, findings, or reasoning. To the extent the trial court

 relied on Kent and due process generally to support its conclusion that Defendant’s

 due process rights were violated, the trial court erred and we reverse the Order to the

 extent that it is based on this perceived constitutional violation.

¶ 30 Defendant’s constitutional rights were not violated, much less flagrantly so, as

 required for the grant of his Motion to Dismiss pursuant to N.C.G.S. § 15A-954(a)(4).

 As there were no flagrant violations of Defendant’s constitutional rights, we need not

 address whether Defendant was irreparably prejudiced. We reverse the Order

 granting Defendant’s Motion to Dismiss pursuant to N.C.G.S. § 15A-954(a)(4).

 CONCLUSION

¶ 31 The challenged and unchallenged findings of fact do not support concluding

 there was any violation of Defendant’s constitutional rights to equal protection, to be

 6 Our appellate courts have consistently required this approach in the context of
 sentencing. See, e.g., State v. Whitehead, 365 N.C. 444, 447, 722 S.E.2d 492, 495 (2012) (“Trial
 courts are required to enter criminal judgments in compliance with the sentencing provisions
 in effect at the time of the offense.”).
 STATE V. GARRETT

 2021-NCCOA-591

 Opinion of the Court

protected from cruel and unusual punishment, or to substantive or procedural due

process. The trial court erred in granting Defendant’s Motion to Dismiss under

N.C.G.S. § 15A-954(a)(4).

 REVERSED AND REMANDED.

 Chief Judge STROUD and Judge COLLINS concur.